LINNIE L. PETERS, Petitioner in Her Own Behalf and in Behalf of Her Infant Daughter, IRENE PETERS, Respondent, *v.* ALLIE TALLCHIEF, Appellant.

(County Court, Niagara County, February, 1907.)

Indians — Proof of wills — In State courts.

In summary proceedings to recover the possession of lands in the Tuscarora Indian reservation before a justice of the peace, the petitioner cannot establish his right to the possession of the lands by proving before the justice the execution of a will by the former occupant, a member of the Tuscarora tribe, whose sole title depends upon his occupation of the premises for twenty-eight years before his death, where the will has not been admitted to probate by the proper tribunal.

APPEAL from a final order in summary proceedings made by a justice of the peace.

William E. Lockner, for petitioner and respondent.

W. Luther Reeves, for defendant and appellant.

HICKEY, J. This is an appeal from a final order in summary proceedings, made by a justice of the peace of the

town of Lewiston, awarding possession of the premises in controversy to the petitioner.

The premises in question are tribal lands of the Tuscarora Indians. The facts appear to be substantially as follows: One Jeremiah Peters, a Tuscarora Indian, who died five or six years ago, occupied the premises in question, consisting of about twenty-three acres, for about twenty-eight years before his death. He left him surviving Wilbur J. Peters, his son, and Allie Peters, now Allie Tallchief, the appellant, his daughter. At the time of Jeremiah Peters' death, his son, Wilbur, with his wife, the petitioner herein, were residing with him upon the premises. Shortly before his death he executed, with apparently all due formalities, a last will and testament, whereby he devised the premises in question to his said son, Wilbur J. Peters. For some time after the death of Jeremiah Peters, his son, Wilbur, and wife, the petitioner, continued to reside upon the premises, and there was born to them one child, who is now living and of the age of about three years. In the neighborhood of two years after the death of Jeremiah Peters, his said son, Wilbur, was sent to prison where he died after two years' confinement. During the time her husband was in prison, petitioner continued to reside in a way upon the premises in question, but was absent from the premises for months at a time. After the death of Wilbur J. Peters, his sister, Allie Tallchief, and her husband took possession of the residence upon the premises in question during the absence of petitioner therefrom. Petitioner then instituted summary proceedings in justice's court and procured an order awarding her possession of the premises. From that order this appeal is taken.

Petitioner swore, upon the trial in the court below, that Jeremiah Peters occupied the premises for about twenty-eight years before his death. One other witness testified that he occupied the premises before his death, without stating any length of time during which such occupancy continued. No proof was given tending to show how he came to occupy the premises. It did not appear whether the premises were allotted to him by the chiefs of the nation, or whether he held them under a lease, or how. The naked fact appeared

that he occupied the premises, and nothing more. There was no proof that he cultivated the premises or ever made any improvement thereon.

There is no State law with which I am familiar, or which has been called to my attention, under which a bare occupancy, such as the proof here discloses, creates rights in land which survive the occupant and which he can transmit by will; and, if there is any Indian law or custom to that effect, it has not been proved in this case. I fail to see, therefore, how, upon the proofs, petitioner was entitled to the order made in the court below.

But, aside from the reasons given above why the order in the court below cannot be upheld, there are other features of the case that seem more or less serious. For instance, it is contended, on behalf of petitioner, that Jeremiah Peters, by reason of his occupancy, acquired some rights in the premises in the nature of a fee and that, under his will, these rights passed to his son, Wilbur J., and that, upon the death of Wilbur J. intestate, the entire premises descended to his infant child, subject to petitioner's right of dower. Upon the trial below the subscribing witnesses to the alleged last will of Jeremiah Peters were called and proofs were made of its due execution, as is ordinarily done in Surrogate's Court. The instrument was then put in evidence under objection. There was some proof offered, which I do not regard as very satisfactory, that, according to the Indian custom, an Indian will operates as a deed. There was also some proof tending to show that, upon the death of an Indian, it was the duty of the chiefs of the nation to settle disputes among the heirs. This court held very recently, in Matter of Catharine Jack, a deceased Tuscarora Indian woman, 52 Misc. Rep. 424, following the Supreme Court in Dole v. Irish, 2 Barb. 639, that Surrogates' Courts have no jurisdiction over Indians' estates. If, then, a Surrogate's Court of the State cannot probate an Indian's will so as to effect a transfer of property, how can it be done in a justice's court? Can a legatee or devisee under an alleged Indian will bring an action against another In-

dian, or even against a white man, to recover personal or real property and, without notice to the defendant that an attempt would be made to establish title under a will, succeed in establishing his title or ownership to the property in question by simply making formal proof that the alleged will was executed in accordance with the laws of this State? I am not ready to yield my assent to such a proposition. To so hold would give an Indian much greater rights than the white citizens of the State enjoy. The will of a citizen cannot be put in evidence in any court for the purpose of establishing title until it shall have first been admitted to probate in some other court where all questions as to its validity and the competency of the person making it either were or could have been tried out, and where all the heirs and next of kin of the testator had an opportunity to be heard. If our courts are to take cognizance of Indian wills, it should be through the Surrogates' Courts, where the heirs and next of kin can be brought in and given a hearing. If the practice which was followed in this case is to prevail, namely, that Indian wills operate as deeds, all sorts of confusion must result.

Suppose, in this case, that Jeremiah Peters had left other heirs than the two children named, and such heirs not having joined with Allie Tallchief in entering into possession of the premises they would not have been parties to this proceeding. Notwithstanding the fact that they were not parties to the proceeding a judgment has been rendered, in a sense, probating Jeremiah Peters' will and establishing title in petitioner and her child. Of course it may be said that the other heirs of Jeremiah Peters, not being parties to this proceeding, would not be bound thereby. Generally speaking this is true; but what is their remedy? They cannot come into Surrogate's Court to have the validity of the alleged will or the competency or freedom from restraint of the testator determined. It is possible the Supreme Court might assume probate jurisdiction in such a case, but I doubt it. However incompetent, then, the testator may have been, what remedy

would these other heirs, if any, have? If the chiefs of the nation had, in the first instance, under Indian law power to settle such questions among the heirs, they might well hesitate in such an attempt now, after a State court has, in a sense, probated the will and awarded possession to the petitioner and her child. It seems to me that our courts should pause before establishing title to property under an Indian will upon such proof as was presented in this case. While the thought has not influenced my judgment in this matter to any extent, still I am inclined to the belief that the Indians have some method of their own for settling these questions; otherwise questions of this kind would have long ago reached our courts and been determined. I think it well to let the Indians settle these questions among themselves until such time as the State or National governments shall have defined more clearly the legal *status* of Indians and shall have marked out a course of procedure for the courts to follow.

There are some other questions involved which would permit of considerable discussion, but the necessity for it is not apparent.

For the reasons already stated, the final order in the court below is reversed, with costs.

Final order reversed, with costs.